# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

V

TRAVIS RAYNARD EDWARDS,

Defendant-Appellee.

UNPUBLISHED
May 28, 2015

No. 317251
Wayne Circuit Court
LC No. 13-001903-AR

Before: BORRELLO, P.J., and WILDER and STEPHENS, JJ.

PER CURIAM.

Defendant was charged with carrying a concealed weapon in a motor vehicle ("CCW"), MCL 750.227, possession of a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b(1), and felon in possession of a firearm, MCL 750.224f. The prosecution appeals by leave granted[1] a circuit court order affirming a district court order that dismissed the charges against defendant. We reverse and remand for further proceedings consistent with this opinion.

I

On January 26, 2013, between 6:00 and 6:30 p.m., Detroit Police Officer Charles Lynem, and his partner, Chancellor Searcy, were in a marked scout car patrolling Gratiot Avenue near the intersection of Eastburn and Gratiot. While traveling southbound on Gratiot, Lynem observed a silver Ford Taurus parked at a Marathon Gas Station. The vehicle was located between the gas pumps and the entrance to the convenience store, and its engine was running. While Lynem waited to make a left turn into the gas station lot, he watched the Taurus for approximately 15 to 30 seconds from a vantage point of approximately 100 feet. During this time, the officers watched defendant exit the convenience store. Lynem testified that he made eye contact with defendant and then observed defendant clutch, with his right hand, a large bulge at his waistband. Defendant then entered the rear passenger seat of the Taurus.

---

[1] *People v Edwards*, unpublished order of the Court of Appeals, entered January 10, 2014 (Docket No. 317251).

-1-

The officers watched the Taurus leave the gas station and began to follow the vehicle. The officers decided to initiate a traffic stop based on their conclusion that the Taurus had been impeding traffic in the Marathon parking lot as well as defendant's conduct as he exited the gas station. During the stop, the officers approached the vehicle. Lynem asked the female driver to roll down all four windows. After the windows were rolled down, Lynem observed defendant slump forward toward the front passenger seat with his hands near the floorboard.

Lynem ordered defendant to exit the vehicle. Defendant did not immediately comply with Lynem's order. Searcy then instructed defendant to exit the vehicle, and defendant complied with his order, at which time Searcy handcuffed defendant. While Lynem held defendant near the trunk area of the Taurus, Searcy entered the vehicle through the rear passenger door and emerged with a nickel-plated handgun. Defendant was then arrested and placed in the patrol car. On the way to the police station, without any questioning by the officers and before the officers had advised defendant of his right to remain silent, defendant voluntarily made the following statement: "Please give me a break. I keep the gun -- just keep the gun for protection. You guys can keep that gun. It's my father's gun. Just please let me go."

Following the preliminary examination, the prosecution moved to bind defendant over to the circuit court for trial on the charged offenses. During oral argument on the motion to bind over defendant, defendant moved for suppression of the evidence arising from the traffic stop, and asked the district court to dismiss the case, on the basis that the officers illegally stopped the Taurus because the vehicle had not violated a state or local traffic law and defendant had not performed an illegal act by clutching his waistband. Additionally, defendant argued that his allegedly furtive gesture inside the Taurus was not enough to establish probable cause to search the vehicle. In response, the prosecution asserted that the traffic stop was proper and that probable cause was not necessary for the officers to remove defendant from the vehicle in light of their belief that defendant was armed. Defendant argued in rebuttal that the evidence was obtained after he was placed under arrest by the officers, which required a showing of probable cause, and contended, after citing the reasonable suspicion standard required for an investigatory stop, that the officers did not observe any criminal activity related to defendant, let alone conduct that established probable cause.

The district court took the matter briefly under advisement, and thereafter concluded that the stop was unwarranted because the driver of the Taurus had not committed the traffic offense of impeding traffic, and that defendant's act of clutching his waistband was not a crime, thus, implicitly granting defendant's motion to suppress evidence. The district court entered an order dismissing the charges against defendant on the basis of insufficient evidence.

The prosecution appealed the dismissal to the circuit court, arguing that the district court abused its discretion when it failed to bind defendant over to the circuit court for trial. In particular, the prosecution asserted that Lynem had a reasonable suspicion, based on the totality of the circumstances, including his experience as a police officer, that defendant was carrying a concealed weapon, which justified the officers' stop of the vehicle and subsequent search based on their belief that defendant was armed. The prosecution also argued that the district court erred in relying on the fact that defendant's act of clutching his waistband was not a crime, as the officers only needed a reasonable suspicion of ongoing criminal activity to stop defendant. Defendant asserted that the evidence was acquired following an illegal arrest because the officers

lacked probable cause to stop the Taurus, place him under arrest, and search the vehicle. Additionally, defendant argued that the officers lacked a reasonable suspicion that justified stopping the vehicle. The circuit court affirmed the district court's order of dismissal, finding that the officers lacked a reasonable suspicion to stop the vehicle in which defendant was riding because the officers had no reason whatsoever to stop defendant or the vehicle.

II

The prosecution argues that the district court erred when it granted defendant's motion to suppress the evidence and abused its discretion when it failed to bind defendant over for trial. We agree.

This Court reviews de novo a trial court's ultimate decision regarding a motion to suppress evidence. *People v Davis,* 250 Mich App 357, 362; 649 NW2d 94 (2002). The trial court's factual findings are reviewed for clear error and will not be reversed unless this Court is definitely and firmly convinced that a mistake has been made. *Id.* Whether a search violated the Fourth Amendment, and whether an exclusionary rule applies, is a question of constitutional law that this Court reviews de novo. *People v Hyde*, 285 Mich App 428, 438; 775 NW2d 833 (2009). Likewise, whether an officer's suspicion is reasonable under the Fourth Amendment is a question of law that is also reviewed de novo. *People v Bloxson,* 205 Mich App 236, 245; 517 NW2d 563 (1994).

Furthermore, this Court reviews for an abuse of discretion "[a] district court's bindover decision that is contingent on the factual sufficiency of the evidence." *People v Norwood*, 303 Mich App 466, 468; 843 NW2d 775 (2013). "This Court reviews de novo the bindover decision to determine whether the district court abused its discretion, giving no deference to the circuit court's decision." *Id*. (quotation marks and citation omitted).

III

The United States and Michigan constitutions prohibit unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. Generally, a search or seizure conducted without a warrant is unreasonable per se under the state and federal constitutions unless the search falls within one of the recognized exceptions to the warrant requirement. *People v Champion,* 452 Mich 92, 98; 549 NW2d 849 (1996). An investigatory stop, commonly known as a "*Terry* stop," is one of the recognized exceptions to the warrant requirement. *Terry v Ohio,* 392 US 1, 3; 88 S Ct 1868; 20 L Ed 2d 889 (1968). Under *Terry*, a brief stop for further investigation is constitutionally permissible when "a police officer has a reasonable, articulable suspicion to believe a person has committed or is committing a crime given the totality of the circumstances." *People v Barbarich*, 291 Mich App 468, 473; 807 NW2d 56 (2011). With regard to motor vehicles, a police officer may perform a traffic stop on the basis of an articulable and reasonable suspicion that the vehicle or one of its occupants is violating the law. *People v Williams*, 236 Mich App 610, 612; 601 NW2d 138 (1999).

"Reasonable suspicion entails something more than an inchoate or unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *Champion*, 452 Mich at 98, citing *United States v Sokolow,* 490 US 1; 109 S Ct 1581; 104 L Ed

2d 1 (1989). Stated differently, "[t]he totality of the circumstances as understood and interpreted by law enforcement officers, not legal scholars, must yield a particular suspicion that the individual being investigated has been, is, or is about to be engaged in criminal activity." *People v Nelson*, 443 Mich 626, 632; 505 NW2d 266 (1993). In considering whether a police officer had a reasonable suspicion that justified a *Terry* stop, this Court should adhere to the principle that "[c]ommon sense and everyday life experiences predominate over uncompromising standards." *Id*. at 635-636. Additionally, "deference should be given to the experience of law enforcement officers and their assessments of criminal modes and patterns." *People v Steele*, 292 Mich App 308, 315; 806 NW2d 753 (2011), citing *United States v Arvizu*, 534 US 266, 273-274; 122 S Ct 744; 151 L Ed 2d 740 (2002). However, "[a]n officer testifying that he inferred [that a defendant was engaged in criminal activity] on the basis of his experience and training is obliged to articulate how the behavior that he observed suggested, in light of his experience and training, an inference of criminal activity." *People v LoCicero*, 453 Mich 496, 505-506; 556 NW2d 498 (1996). Notably, "fewer foundational facts are necessary to support a finding of reasonableness where a moving vehicle is involved than where a house or home is involved," and "a stop of a motor vehicle for investigatory purposes may be based upon fewer facts than those necessary to support a finding of reasonableness where both a stop and a search are conducted by the police." *People v Yeoman*, 218 Mich App 406, 410-411; 554 NW2d 577 (1996).

In the instant case, the district court focused exclusively on whether the officers validly stopped the vehicle based on a traffic violation and concluded that the vehicle in which defendant was riding did not commit the traffic offense of impeding traffic. Although it concluded that defendant's act of clutching his waistband was not a crime in and of itself, however, the district court failed to make any finding with regard to whether Lynem had a reasonable suspicion that defendant was engaging in illegal activity.

Upon de novo review, we find that the district court erred in granting defendant's motion to suppress because the officers did not violate defendant's Fourth Amendment rights by obtaining evidence from the stopped vehicle. *Hyde*, 285 Mich App at 438. First, Lynem's testimony at the preliminary examination demonstrated that the officers validly stopped the Taurus based on Lynem's reasonable suspicion that defendant, an occupant of the vehicle, was engaging in illegal activity. *Williams*, 236 Mich App at 612. Lynem saw defendant clutch a large bulge at his waistband after making eye contact with Lynem. Additionally, Lynem testified that, in his experience, which included four years of service with the Detroit Police Department, defendant's behavior indicated that he was armed. As such, Lynem specifically articulated how his previous experience led him to draw an inference of criminal activity from defendant's conduct. *LoCicero*, 453 Mich at 505-506. Even though defendant's act of clutching his waistband may have had an innocuous purpose, as this Court previously stated, "The question is not whether the conduct is innocent or guilty. Very often what appears to be innocence is in fact guilt, and what is indeed entirely innocent may in some circumstances provide the basis for the suspicion required to make an investigatory stop." *Yeoman*, 218 Mich App at 410 (quotation marks and citation omitted). Therefore, in light of the deference that we must give to Lynem's experience as a police officer and his assessment of the behavioral patterns typical of individuals who illegally carry concealed weapons, *Steele*, 292 Mich App at 315, the officers had a valid basis to stop the Taurus based on Lynem's reasonable suspicion that defendant was engaging in illegal activity. *Williams*, 236 Mich App at 612; see also *People v Taylor*, 214 Mich App 167,

-4-

170-171; 542 NW2d 322 (1995) (holding that stopping the defendant was justified when an officer had a reasonable suspicion, based on his experience, that the defendant was carrying a concealed weapon after observing a bulge in the defendant's jacket).

Second, after the officers lawfully stopped the vehicle, Searcy performed a valid search of the area of the passenger compartment in which defendant was sitting. In general, a police officer must have probable cause to search a vehicle without a warrant. *People v Levine*, 461 Mich 172, 179; 600 NW2d 622 (1999). However, a police officer is permitted to search "the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden," if the "officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Michigan v Long*, 463 US 1032, 1049; 103 S Ct 3469; 77 L Ed 2d 1201 (1983) (quotation marks and citation omitted); see also *People v Gewarges*, 176 Mich App 65, 69; 439 NW2d 272 (1989) ("If the police officer reasonably believes that the suspect is armed and dangerous, the officer may conduct a limited protective search for concealed weapons.").

Under the totality of the circumstances, the officers validly performed a protective search of the vehicle. *Long*, 463 US at 1049. After the driver of the vehicle rolled down all of the windows at Lynem's request, Lynem saw defendant slump forward in the direction of the front passenger seat with his hands near the floorboard. When Lynem instructed defendant to exit the vehicle, defendant did not comply with Lynem's request. Instead, defendant remained seated until Searcy asked defendant a second time to exit the vehicle. This furtive behavior, in conjunction with Lynem's reasonable suspicion—based on his experience—that defendant's movements outside the gas station were indicative of an individual who was armed, provided specific and articulable facts that established a reasonable belief that defendant had access to a weapon and, therefore, was dangerous. *Id*. Accordingly, Searcy's limited search of the rear-passenger area of vehicle where defendant had been sitting, which produced a nickel-plated handgun, was a valid protective search. *Id*.

We note that defendant argues that Searcy's search of the vehicle exceeded the nature and scope that is permissible under *Terry* because there was no evidence that defendant was armed and dangerous. However, as previously explained, Lynem's testimony included specific and articulable facts that established a reasonable belief that defendant had access to a weapon and was dangerous. Moreover, contrary to defendant's arguments on appeal, even though defendant was handcuffed and standing near the trunk of the vehicle when Searcy performed the search, a police officer does "not act unreasonably in taking preventive measures to ensure that there were no other weapons within [the suspect's] immediate grasp *before permitting him to reenter his automobile*." *Id*. at 1051 (emphasis added). Likewise, "if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside" if the police officers, who have a reasonable belief that the suspect is armed, do not perform a protective search. *Id*. at 1051-1052. Accordingly, because the officers had a reasonable belief that defendant was armed—and because Searcy searched and discovered the weapon in the immediate area where defendant had been sitting, which was the area where a weapon may have been placed or hidden—Searcy's search did not exceed the nature and scope that is permissible under *Terry*. *Id*. at 1049.

Additionally, we note that defendant argues at length in his brief on appeal that the officers' act of stopping and searching the vehicle was unreasonable and violated the Fourth Amendment because the officers lacked probable cause to stop the vehicle based on a traffic violation and, as a result, lacked probable cause to seize and search the vehicle. However, we need not address this argument given our conclusion that the officers legally performed a *Terry* stop based on their reasonable suspicion that defendant was engaging in illegal activity, i.e., carrying a concealed weapon, and legally performed a limited search of the passenger compartment based on their reasonable belief that defendant was armed. *Williams*, 236 Mich App at 612. Indeed, as this Court previously stated:

> That one of the officers—wrongly—believed that defendant was committing a traffic misdemeanor does not undermine the validity of a traffic stop premised upon the officers' reasonable suspicion of other criminal activities raised by defendant's conduct. Either the officers' suspicion that a theft had occurred or their suspicion that defendant was violating the careless driving law sufficed to allow the instant stop. [*People v Peebles*, 216 Mich App 661, 666; 550 NW2d 589 (1996).]

Likewise, the fact that defendant was detained in handcuffs during the search of the backseat of the vehicle does not necessarily establish that defendant was under arrest, and probable cause was not required to restrain defendant and search the area where defendant had been sitting. *People v Green*, 260 Mich App 392, 396-398; 677 NW2d 363 (2004) (citing cases in which a defendant's restraint did not constitute an arrest), overruled on other grounds by *People v Anstey*, 476 Mich 436; 719 NW2d 579 (2006); see also *People v Nimeth*, 236 Mich App 616, 624; 601 NW2d 393 (1999). Instead, in light of the circumstances and the officers' reasonable belief that defendant was armed, the officers' detention of defendant was a reasonable safety precaution.

Therefore, because the evidence was not obtained in violation of defendant's Fourth Amendment rights, the district court erred in granting defendant's motion to suppress. *Davis*, 250 Mich App at 362.

IV

In light of our conclusion that the district court erred in suppressing the evidence, we must consider whether the evidence presented at the preliminary examination was sufficient to bind over defendant to the circuit court on the CCW, felony-firearm, and felon in possession of a firearm charges. Pursuant to MCL 766.13, a magistrate must bind over a defendant for trial when the prosecutor presents evidence showing that there is probable cause to believe that a felony has been committed and that the defendant committed it, *People v Plunkett*, 485 Mich 50, 57; 780 NW2d 280 (2010), meaning that the prosecution must present "evidence from which at least an inference may be drawn establishing the elements of the crime charged," *People v Yost*, 468 Mich 122, 126; 659 NW2d 604 (2003). Probable cause exists when there is "a quantum of evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *Plunkett*, 485 Mich at 57 (quotation marks and citation omitted). Stated differently,

-6-

[c]ircumstantial evidence and reasonable inferences arising from the evidence are sufficient to support the bindover of the defendant if such evidence establishes probable cause. The evidence satisfies the probable cause standard when, by a reasonable ground of suspicion, [it is] supported by circumstances sufficiently strong to warrant a cautious person in the belief that the accused is guilty of the offense charged. [*People v Greene*, 255 Mich App 426, 444; 661 NW2d 616 (2003) (quotation marks and citations omitted)].

As such, the standard for probable cause "is less rigorous than the requirement to find guilt beyond a reasonable doubt to convict a criminal defendant, and the gap between probable cause and guilt beyond a reasonable doubt is broad." *Plunkett*, 485 Mich at 57 (quotation marks and citations omitted). Accordingly, "[i]f the evidence conflicts or raises a reasonable doubt concerning the defendant's guilt, the defendant should nevertheless be bound over for trial, at which the trier of fact can resolve the questions." *People v Redden*, 290 Mich App 65, 84; 799 NW2d 184 (2010).

The prosecution must establish the following elements to support a CCW in a vehicle charge: "(1) the presence of a weapon in a vehicle operated or occupied by the defendant, (2) that the defendant knew or was aware of its presence, and (3) that he was carrying it." *Nimeth*, 236 Mich App at 622 (quotation marks and citation omitted). "Carrying" a weapon is similar to possession; the following factors may be relevant to whether a defendant "carried" a weapon:

(1) the accessibility or proximity of the weapon to the person of the defendant, (2) defendant's awareness that the weapon was in the motor vehicle, (3) defendant's possession of items that connect him to the weapon, such as ammunition, (4) defendant's ownership or operation of the vehicle, and (5) the length of time during which defendant drove or occupied the vehicle. [*People v Butler*, 413 Mich 377, 390 n 11; 319 NW2d 540 (1982).]

The elements of felon in possession of a firearm are the following: (1) that the defendant was in possession of a firearm and (2) that the defendant had been convicted of a specified felony. MCL 750.224f(2). Possession may be actual or constructive and may be proved by circumstantial evidence. *People v Hill*, 433 Mich 464, 470-471; 446 NW2d 140 (1989). A defendant has constructive possession of a firearm when the defendant has "proximity to the article together with indicia of control." *Id*. at 470. Likewise, a defendant can have constructive possession if the firearm's location is known to the defendant and the firearm is reasonably accessible to the defendant. *Id*. "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Taylor*, 275 Mich App 177, 179; 737 NW2d 790 (2007) (quotation marks and citation omitted). Although CCW cannot serve as a predicate felony for a felony-firearm charge, felon in possession of a firearm can serve as a predicate felony. MCL 750.227b(2); see also *People v Cortez*, 206 Mich App 204, 207; 520 NW2d 693 (1994).

The record shows that the prosecution presented sufficient evidence at the preliminary examination "to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief" that defendant committed the charged offenses. *Plunkett*, 485 Mich at 57. First, Lynem's observation of the bulge near defendant's waistband, Lynem's testimony that

Searcy's protective search of the vehicle occupied by defendant produced a nickel-plated weapon, defendant's voluntary statement[2] in the patrol car indicating that he was aware of the presence of the gun and that he kept the weapon for protection, and defendant's proximity to the location where the weapon was found in the vehicle provided probable cause to believe that defendant committed the offense of CCW in a vehicle. *Nimeth*, 236 Mich App at 622. Second, defendant's proximity to the weapon, defendant's statements demonstrating his control of the weapon, and the parties' stipulation at the preliminary examination that defendant was ineligible to possess a firearm on the date of the incident due to his previous conviction of a specified felony established probable cause to believe that defendant committed the offense of felon in possession of a firearm. MCL 750.224f(2). Finally, the evidence indicating that defendant possessed a firearm while committing the offense of felon in possession of a firearm established probable cause to believe that defendant committed the offense of felony-firearm. *Taylor*, 275 Mich App at 179. Thus, the district court abused its discretion when it failed to bind defendant over to the circuit court for trial on the charged offenses, and the circuit court erred in affirming the district court's order of dismissal.

Therefore, for the reasons stated above, we reverse the district court's order of dismissal, order the charges reinstated, and remand this case to the district court for entry of an order binding defendant over to the circuit court. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Kurtis T. Wilder
/s/ Cynthia Diane Stephens

---

[2] We note that defendant's statement was not admitted at the preliminary examination in violation of his *Miranda* rights because the statement was made freely and was not made during custodial interrogation. *People v White*, 493 Mich 187, 194; 828 NW2d 329 (2013) ("However, *Miranda* [*v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966)] also clarified that voluntarily given confessions that are not the result of impermissible custodial interrogations remain admissible."); see also *id*. at 195 (" '[T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent.' "), quoting *Rhode Island v Innis*, 446 US 291, 300-302; 100 S Ct 1682; 64 L Ed 2d 297 (1980).